**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL HANNA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No.** |
| | ) | |
| MIDWESTERN REGIONAL MEDICAL | ) | **JURY TRIAL DEMANDED** |
| CENTER, INC. d/b/a CANCER | ) | |
| TREATMENT CENTERS OF | ) | |
| AMERICA, EDMOND NISKALA, | ) | |
| Individually, and KIM PIERCY, | ) | |
| Individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff, MICHAEL HANNA ("HANNA"), by and through his attorneys, TRENT LAW FIRM, P.C., complaining against the Defendants in this matter, MIDWESTERN REGIONAL MEDICAL CENTER d/b/a CANCER TREATMENT CENTERS OF AMERICA ("CTCA"), EDMOND NISKALA, individually ("NISKALA"), and KIM PIERCY, individually ("PIERCY"), (hereinafter collectively "Defendants"), states as follows:

### NATURE OF THE ACTION

This is an action for declaratory and injunctive relief and for damages against the defendants to enforce the Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq*.) ("Title VII"), under the Illinois Human Rights Act ("IHRA"), and for state law causes of action.

### PARTIES

1.    Plaintiff HANNA is an adult, African American, male citizen who resides within

the territorial jurisdiction of the District Court.

2.    Defendant CTCA is licensed to do business in the State of Illinois. At all times relevant to this Complaint, CTCA did business within the territorial jurisdiction of the District Court.

3.    Defendant NISKALA is an adult, Caucasian, male citizen who resides within the territorial jurisdiction of the District Court.

4.    NISKALA is sued in his individual capacity.

5.    Defendant PIERCY is an adult, Caucasian, female citizen who resides within the territorial jurisdiction of the District Court.

6.    PIERCY is sued in her individual capacity.

## JURISDICTION

7.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as the district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, and its supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

8.    Jurisdiction is invoked pursuant to 42 U.S.C. § 1981 including 42 U.S.C. § 1981a(c)(2) (limits do not apply to back pay or front pay, which is awarded under 42 U.S.C. § 2000e5(g)(1)).

9.    All jurisdictional prerequisites to a lawsuit have been met to wit:

      a.    On January 13, 2018, HANNA filed a charge of discrimination alleging discrimination based on race and retaliation which was perfected by the Illinois Department of Human Rights ("IDHR") and by a work sharing agreement between the Department and the Equal Employment Opportunity Commission ("EEOC") was cross-filed and perfected at both agencies;

2

b.      The charge was filed at the IDHR (*see* Exhibit A);

c.      The charge was perfected by the IDHR and thus was perfected at both the IDHR and the EEOC (*see* Exhibit A);

d.      The charge was assigned EEOC Charge No. 21B-2018-00467;

e.      The charge pursuant to the work-sharing agreement between agencies was filed within 300 days of the date of the last act of discrimination, retaliation and harassment, which was and were on-going through the date HANNA was terminated;

f.      HANNA received a Right-to-Sue letter from the EEOC dated December 23, 2018 (*see* Exhibit B);

g.      This lawsuit is being filed within 90 days of the date of receipt of the Right-to-Sue letter (*see* Exhibit B);

10.     HANNA is raising claims that all flow out of a common nucleus of common facts and parties.

## **VENUE**

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because:

a.      all of the Defendants "reside" in this jurisdictional district, in the sense that they all conduct substantial business and engage in significant interstate commerce out of this jurisdictional district of a sufficient kind and amount to establish the minimum contacts necessary to subject them to the personal jurisdiction of this court;

b.      Defendant CTCA, is believed to conduct business in this court's jurisdictional district; and

c.      all events or omissions giving rise to Plaintiff's claims occurred here in this jurisdictional district.

3

## FACTS

12.    CTCA is properly filed with the Illinois Secretary of State's Office under file no. 50587215 and currently has a status of Active (*see* Exhibit C).

13.    CTCA provides services at facilities at various locations throughout the State of Illinois and nationwide.

14.    CTCA offers patients outpatient access to medical oncology, hematology, and infusion services.

15.    CTCA hired HANNA on or about February 4, 2013 to work full-time in the housekeeping department.

16.    Similarly situated employees in the department where HANNA worked and on his shift were Non-African American.

17.    CTCA terminated HANNA'S employment, without legitimate cause or reason, on or about October 25, 2017.

18.    During the course of his employment, HANNA completed all of his goals and met or exceeded his job duties.

19.    That, at the time of HANNA'S termination, none of HANNA'S Supervisors were African American.

20.    That upon information and belief, all supervisors and managers harassing and discriminating against HANNA during the course of his employment were either Hispanic or Caucasian.

21.    That upon information and belief, all other similarly situated employees to HANNA were either Caucasian or Hispanic.

4

22.    That at one point during the course of HANNA's employment with CTCA, Rickey Moore ("MOORE"), an African American, was HANNA's supervisor.

23.    That during the course of HANNA'S employment when MOORE was a supervisor, HANNA received positive performance reviews and few, if any, verbal or written reprimands.

24.    That at one point during the course of HANNA'S employment with CTCA, that upon information and belief, MOORE was demoted and moved to the Maintenance Department.

25.    That during the course of HANNA'S employment with CTCA, when MOORE was HANNA'S supervisor, Sarah Wargo, ("WARGO") was MOORE'S supervisor.

26.    That WARGO gave HANNA good performance reviews.

27.    That upon information and belief, HANNA only received one written write-up at the behest of WARGO because he was on his lunch break and he did not report to MOORE that he was going to take his lunch break.

28.    That upon information and belief, WARGO forced MOORE to give HANNA a written write-up.

29.    That NISKALA, a Caucasian, was HANNA's supervisor, in pertinent part, during the course of HANNA's employment with CTCA.

30.    That PIERCY, a Caucasian, was NISKALA's supervisor, in pertinent part, during the course of HANNA's employment with CTCA.

31.    That all employees in the Housekeeping Department received two 15-minute breaks and one 30-minute break.

32.    That HANNA had a set lunch break and/or had to advise NISKALA of the exact time he was going to take his lunch break prior to doing so.

33.     That similarly situated employees in the Housekeeping Department did not have set 15-minute breaks, nor did they have to let NISKALA know when they were taking their breaks.

34.     That HANNA had to advise NISKALA as to when he was taking his 15-minute breaks.

35.     That similarly situated employees in the Housekeeping Department did not have set lunch breaks, nor did they have to let NISKALA know when they were taking their lunch breaks.

36.     That similarly situated employees on multiple occasions took at least one-hour lunch breaks and NISKALA was aware of said extended time breaks and did nothing to remedy the situation.

37.     That HANNA complained to NISKALA that the other employees were receiving one-hour lunch breaks and HANNA could only receive a 30-minute lunch break.

38.     That subsequently thereafter, HANNA asked NISKALA if he could have a one-hour lunch break and NISKALA denied HANNA'S request.

39.     That other similarly situated employees were allowed to take multiple breaks beyond the allotted two 15-minute breaks per day.

40.     That other similarly situated employees were allowed to go outside during their breaks and NISKALA prohibited HANNA from going outside during his breaks.

41.     That NISKALA made HANNA complete extended duties, such as checking under the bed and checking drawers, which other similarly situated employees in the Housekeeping Department did not have to do.

42.     That subsequently thereafter, NISKALA gave HANNA a verbal warning for not properly checking the drawers.

43.     That on one occasion during HANNA's shift, he checked the drawers in one of the rooms and found medical supplies taken from the hospital including syringes, medical packages, and hazard bags that should not have been in the drawer and that, upon information and belief, were placed in the drawer by NISKALA in an attempt to improperly reprimand HANNA.

44.     That on one occasion, HANNA found a hollow point bullet in the drawer of one of the rooms he was cleaning, and that HANNA reported his finding to both NISKALA and Security.

45.     That on another occasion, a swastika was drawn on HANNA's cleaning cart and HANNA reported this to PIERCY and upon information and belief, there was no investigation and no follow-up to this incident.

46.     That on one occasion Francisco, last name unknown, a Hispanic similarly situated employee working in the Housekeeping Department, cleaned one of the floors in the building with a buffer machine with authorization from NISKALA.

47.     That subsequently thereafter, NISKALA made HANNA clean the exact same floor on his hands and knees with an "SOS" pad.

48.     That on one occasion, PIERCY stayed past her shift solely so that she could evaluate a room that HANNA had cleaned, and she indicated to HANNA that his job was not complete.

49.     That on this specific occasion, PIERCY indicated that the room was vacant.

50.     That in contradiction to PIERCY, NISKALA indicated on this specific occasion that HANNA did not complete what is known as a seven-day cleaning.

51.     That a seven-day cleaning only occurs when a patient is in the room and therefore, PIERCY and NISKALA had contradictory stories regarding the occupancy of the room which indicates that they were improperly attempting to reprimand HANNA.

7

52.     That HANNA received a statement from the patient in that room stating that the room was cleaned properly and thereby confirming that the room was not vacant.

53.     That on one occasion, NISKALA found HANNA in the stairwell after HANNA exited the supply room with supplies in his hand and NISKALA accused HANNA of being outside and gave him a written reprimand.

54.     That further, NISKALA made HANNA clean the entire stairwell with soap and water and a rag from top to bottom during the summer knowing that there was no air conditioning in that location.

55.     That other similarly situated employees were not subjected to such disciplinary actions.

56.     That at all times HANNA had properly carried out his duties.

57.     That HANNA's supervisors put together a diagram to use as an exhibit to show other employees how to properly clean rooms and they attached pictures from specific times when HANNA cleaned rooms as positive examples.

58.     That this is indicative of the harassment and discrimination that HANNA suffered by his supervisors in that they would criticize his work performance and give him verbal and written reprimands while utilizing his work as a positive example to other employees and not giving him credit for said work.

59.     That HANNA would receive constant written reprimands from NISKALA that were not due to his work performance.

60.     That on one occasion, HANNA received a reprimand for not properly wiping a shower curtain and not putting mints on the bed, where other similarly situated employees did not receive reprimands for the same.

61.     That upon information and belief, the housekeeping was responsible for cleaning 112 rooms and therefore, it was impossible to inspect all rooms on a daily basis. That as a result, upon information and belief, NISKALA only focused on inspecting HANNA's rooms.

62.     That HANNA repeatedly reported the harassment and discrimination to Joe Ruder ("RUDER") in Human Resources and to PIERCY, and further, whenever HANNA reported NISKALA for the harassment and discrimination, subsequently thereafter, HANNA would receive a written reprimand from NISKALA.

63.     That upon information and belief, NISKALA and PIERCY would enter the software system in order to change the time that HANNA punched into work.

64.     That HANNA reported this first to PIERCY and no action was taken.

65.     That subsequently thereafter, HANNA reported this to the Human Resources Department and no action was taken.

66.     That PIERCY would always sign off on any written write-ups that NISKALA made against HANNA.

67.     That the Defendants failed to remedy HANNA's complaints of discrimination and failed to take adequate remedial steps to ensure that the ongoing harassing workplace environment cease.

68.     That despite HANNA's complaints, he had to continue enduring a harassing and hostile work environment.

69.     That on October 3, 2016, HANNA filed charges with the Illinois Department of Human Resources ("IDHR") for the racial discrimination he was being subjected to at the CTCA (see Exhibit D).

70.     That during the time that the charges were pending with the IDHR, HANNA did not receive any verbal or written reprimands.

71.     That thereafter, the CTCA fired NISKALA and therefore, HANNA dropped his charges with the IDHR believing that he was no longer going to be discriminated against.

72.     That during the time that those charges were pending, HANNA did not have to report to his supervisor about taking his two 15-minute breaks, nor his lunch breaks, and he could exit the building to take his breaks.

73.     That after NISKALA was fired, PIERCY became HANNA's direct supervisor.

74.     That after HANNA dropped the charges with the IDHR and PIERCY became HANNA's direct supervisor, he again began to experience the systematic and continuous harassment and discrimination from PIERCY at CTCA.

75.     That upon information and belief, PIERCY targeted HANNA and would only evaluate his work and not properly evaluate the work performance of other similarly situated employees.

76.     That even after NISKALA'S termination, the Defendants continuously and systematically failed to remedy HANNA's complaints of discrimination and failed to take adequate remedial steps to ensure that the ongoing harassing workplace environment cease.

77.     That even after NISKALA was terminated, and despite HANNA's complaints, he continued to endure a harassing and hostile work environment.

78.     That PIERCY's ongoing harassment and discrimination continued for four months by her, in part, making improper written write-ups until October 25, 2017 when HANNA was terminated.

79.     That PIERCY knew that HANNA was a Lyft driver and would assist patients by driving them to and from the facility.

80.     That on the date that HANNA was terminated, HANNA left calmly and peacefully, and PIERCY improperly put out a BOLO alert ("Be On the Look Out") knowing that HANNA was also a Lyft driver to prevent him from entering the parking lot in order to drive patients.

## COUNT I
### Title VII Race Discrimination

81.     Plaintiff restates and realleges paragraphs 1-80 as if specifically set forth herein.

82.     42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of race.

83.     Defendant violated 42 U.S.C. § 2000e-2(a) by treating HANNA differently than similarly situated Caucasian and Hispanic employees because of his race.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Find that CTCA discriminated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964;

B.     Award compensatory and punitive damages to the maximum amount provided by statute;

C.     Award all back pay lost since the date of termination plus pre-judgment interest;

D.     Award attorney's fees, expert witness fees, and costs as provided by law;

E.     Award forward pay due to decrease in earnings;

F.     Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.     Grant such additional relief as this Court deems just and proper.

## COUNT II
### Title VII Race Harassment – Hostile Work Environment

84.     Plaintiff restates and realleges paragraphs 1-83 as if specifically set forth herein.

85.     42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of race and affords employees the right to work in an environment free

from discriminatory intimidation, ridicule, and insult.

86.     HANNA belongs to a protected group.

87.     HANNA was repeatedly subjected to unwanted harassment based on his race as set forth above.

88.     CTCA knew and/or should have known of the harassment and failed to take prompt remedial action.

89.     At all times hereto, HANNA acted reasonably under the circumstances.

90.     CTCA is liable for the racial harassment due to a hostile work environment inflicted upon HANNA due to CTCA'S violation of Title VII of the Civil Rights Act of 1964 as set forth above.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Find that CTCA discriminated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964;

B.     Award compensatory and punitive damages to the maximum amount provided by statute;

C.     Award all back pay lost since the date of termination plus pre-judgment interest;

D.     Award attorney's fees, expert witness fees, and costs as provided by law;

E.     Award forward pay due to decrease in earnings;

F.     Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.     Grant such additional relief as this Court deems just and proper.

## COUNT III
## TITLE VII RETALIATION

91.     Plaintiff restates and realleges paragraphs 1-90 as if specifically set forth herein.

92.     42 U.S.C. § 2000e-3(a) makes it unlawful for an employer to discriminate against an employee because he opposes any practice which is unlawful under Title VII.

93.     HANNA'S opposition to CTCA'S actions described above, is protected under 42 U.S.C. § 2000e-3(a).

94.     CTCA terminated HANNA'S employment in retaliation for his protected conduct.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Find that Defendant CTCA discriminated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964 and 29 C.F.R. § 1604.11(a);

B.     Award compensatory and punitive damages to the maximum amount provided by statute;

C.     Award all back pay lost since the date of termination plus pre-judgment interest;

D.     Award attorney's fees, expert witness fees, and costs as provided by law;

E.     Award forward pay due to decrease in lower earnings;

F.     Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.     Grant such additional relief as this Court deems just and proper.

## COUNT IV
## COMMON LAW ASSAULT
### (Against Niskala, individually)

95.     HANNA, complaining of NISKALA, and for Count IV of his Complaint states as follows:

96.     Plaintiff HANNA restates and realleges paragraphs 1-95 as if specifically set forth herein.

97.     NISKALA'S violently hitting of HANNA without his consent, served to place HANNA in reasonable apprehension that an imminent battery was to be perpetrated upon him.

98.     NISKALA at all times knew and intended to violently strike HANNA, and placed HANNA in reasonable fear that a battery was to be perpetrated upon him.

99.     That HANNA went to the emergency room to seek medical treatment due to the violent strike he received from NISKALA.

100.    That HANNA reported being violently struck by NISKALA to the Human Resources Department.

101.    As a direct and proximate result of NISKALA'S assault, HANNA was damaged in one or more of the following respects:

(a)    HANNA has suffered extreme trauma, embarrassment and humiliation, with severe physical and emotional consequences;

(b)    HANNA has suffered severe emotional distress including difficulty concentrating, nervousness, depression, anxiety and other emotional symptoms;

(c)    HANNA experienced and continues to experience pain, suffering, severe mental and emotional distress.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant NISKALA, and for the following relief:

a.    Actual, compensatory and punitive damages in excess of $50,000.00;
b.    Plaintiff's costs and attorney's fees incurred in this action; and
c.    Such other relief as this court deems just and proper.

## COUNT V
## COMMON LAW BATTERY
### (Against Niskala individually)

102.    HANNA, complaining of Defendant NISKALA, and for Count V of his Complaint states as follows:

103.    Plaintiff HANNA restates and realleges paragraphs 1-102 as if specifically set forth herein.

104.    NISKALA'S striking of HANNA was without HANNA'S consent and contrary to statutory law in the State of Illinois.

105.    NISKALA at all times knew and intended to physically strike HANNA without his consent.

14

106.    As a direct and proximate result of NISKALA'S battery, Plaintiff was damaged in one or more of the following respects:

(a)    HANNA has suffered extreme trauma, embarrassment and humiliation, with severe physical and emotional consequences;

(b)    HANNA has suffered severe emotional distress including difficulty concentrating, nervousness, depression, anxiety and other emotional symptoms;

(c)    HANNA experienced and continues to experience pain, suffering, severe mental and emotional distress.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant NISKALA, and for the following relief:

a.    Actual, compensatory and punitive damages in excess of $50,000.00;
b.    Plaintiff's costs and attorney's fees incurred in this action; and
c.    Such other relief as this court deems just and proper.

## COUNT VI
## COMMON LAW ASSAULT BY CTCA

107.    HANNA restates and realleges paragraphs 1-106 as if specifically set forth herein.

108.    At all times relevant hereto, CTCA, as an employer, had control over the business premises, and the ability to control its employees, including NISKALA, who were employed there.

109.    At all times relevant hereto, NISKALA, as an employee, was under the direction and control of CTCA performing the duties assigned to him, and as such, CTCA had the opportunity to control and supervise NISKALA.

110.    At all times relevant hereto, CTCA knew or should have known of the necessity to control said conduct of NISKALA.

111. That it was reasonably foreseeable that if NISKALA were left alone unsupervised on the premises, some harm to HANNA would be likely to occur.

112. Based on the foregoing, CTCA had one or more of the following duties toward HANNA, each of which is independent, separate and distinct from the others:

(a) CTCA had a duty to exercise reasonable care to control NISKALA in order to prevent him from intentionally harming HANNA;

(b) CTCA voluntarily undertook a duty to protect HANNA while he was lawfully on the subject premises.

113. Notwithstanding the aforesaid duties and each of them, CTCA violated its respective and independent duties to HANNA in one or more of the following respects:

(a) CTCA failed to warn HANNA that physical contact with HANNA on the subject premises was inappropriate;

(b) CTCA permitted the above-referenced actions by NISKALA to be inflicted upon HANNA.

(c) CTCA failed to protect HANNA from such contact while he was lawfully on CTCA'S premises.

114. As a direct and proximate result of CTCA'S breach of its respective independent duties, NISKALA was on the business premises, and not controlled or restrained in any fashion, and did then and there willfully and wantonly assault HANNA.

115. As a direct and proximate result of the breaches by CTCA of its duties to HANNA, and the aforesaid conduct, HANNA has been damaged in one or more of the following respects:

(a) HANNA has suffered extreme trauma, embarrassment and humiliation, with severe physical and emotional consequences;

(b)     HANNA has suffered severe emotional distress including difficulty concentration, nervousness, depression, anxiety and other emotional symptoms;

(c)     HANNA experienced and continues to experience pain, suffering, severe mental and emotional distress.

116.    CTCA is liable for the intentional assault willfully and wantonly inflicted by NISKALA on HANNA stemming from the aforesaid duties.

117.    At all times relevant hereto, HANNA was free from willful and wanton conduct on his part.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant CTCA, and for the following relief:

a.     Actual, compensatory and punitive damages in excess of $50,000.00;
b.     Plaintiff's costs and attorney's fees incurred in this action; and
c.     Such other relief as this court deems just and proper.

## COUNT VII
## COMMON LAW BATTERY BY CTCA

118.    HANNA restates and realleges paragraphs 1-117 as if specifically set forth herein.

119.    At all times relevant hereto, CTCA, as an employer, had control over the business premises, and the ability to control its employees including NISKALA who was employed there.

120.    At all times relevant hereto, NISKALA, as an employee, was under the direction and control of CTCA performing the duties assigned to him, and as such, CTCA had the opportunity to control and supervise NISKALA.

121.    At all times relevant hereto, CTCA knew or should have known that NISKALA would engage in inappropriate physical contact with HANNA who was also an employee of CTCA and knew or should have known of the necessity to control said conduct.

17

122.     Based on the foregoing, CTCA had one or more of the following duties toward HANNA, each of which is independent, separate and distinct from the others:

(a)     CTCA had a duty to exercise reasonable care to control NISKALA in order to prevent him from intentionally harming HANNA;

(b)     CTCA voluntarily undertook a duty to protect HANNA while he was lawfully on the subject premises.

123.     Notwithstanding the aforesaid duties and each of them, CTCA violated its respective and independent duties to HANNA in one or more of the following respects:

(a)     CTCA failed to warn NISKALA that physical contact with HANNA was inappropriate;

(b)     CTCA permitted the above-referenced actions by NISKALA to be inflicted upon HANNA;

(c)     CTCA failed to protect HANNA from such contact while he was lawfully on the subject premises.

124.     As a direct and proximate result of CTCA'S breach of its respective independent duties, NISKALA was not controlled or restrained in any fashion, and did then and there willfully and wantonly batter HANNA.

125.     As a direct and proximate result of the breaches by CTCA of its duties to HANNA, and the aforesaid conduct, HANNA has been damaged in one or more of the following respects:

(a)     HANNA has suffered extreme trauma, embarrassment and humiliation, with severe physical and emotional consequences;

(b)     HANNA has suffered severe emotional distress including difficulty concentration, nervousness, depression, anxiety and other emotional symptoms;

18

(c)     HANNA experienced and continues to experience pain, suffering, severe mental and emotional distress.

126.    CTCA is liable for the intentional battery willfully and wantonly inflicted by NISKALA on HANNA stemming from the aforesaid duties.

127.    At all times relevant hereto, HANNA was free from willful and wanton conduct on his part.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant CTCA, and for the following relief:

a.    Actual, compensatory and punitive damages in excess of $50,000.00;
b.    Plaintiff's costs and attorney's fees incurred in this action; and
c.    Such other relief as this court deems just and proper.

### COUNT VIII
### VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT – UNLAWFUL DISCRIMINATION
### (Against CTCA, Niskala, individually, and Piercy, individually)

128.    Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-127 of this Complaint and in his charge of discrimination (Ex. A) as and for this paragraph.

129.    This claim is brought pursuant to the Illinois Human Rights Act ("IHRA") (755 ILCS 5/2-101, *et seq.*).

130.    Defendant CTCA was Plaintiff's Employer under the Illinois Human Rights Act.

131.    Defendant NISKALA was Plaintiff's supervisor under the Illinois Human Rights Act.

132.    Defendant PIERCY was Plaintiff's supervisor under the Illinois Human Rights Act.

133.    Plaintiff was harassed and discriminated against by Defendants in violation of the Illinois Human Rights Act.

134.    As a result of this conduct, Plaintiff has suffered damages, including severe emotional distress.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.      Find that Defendants discriminated against Plaintiff, in violation of the Illinois Human Rights Act;

B.      Order that CTCA implement effective steps to eliminate and remediate harassment and discrimination in the workplace;

C.      Award compensatory and punitive damages to the maximum amount provided by statute;

D.      Award all back pay lost since the date of termination plus pre-judgment interest;

E.      Award attorney's fees, expert witness fees, and costs as provided by law;

F.      Award forward pay due to decrease in lower earnings;

G.      Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

H.      Grant such additional relief as this Court deems just and proper.

## COUNT IX
## VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT-RETALIATION
### (Against CTCA, Niskala, individually, and Piercy, individually)

135.    Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-134 of this Complaint and in his charge of discrimination (Ex. A) as and for this paragraph.

136.    When Plaintiff complained about harassment and discrimination, he was threatened with retaliation and retaliated against, including but not limited to as set forth elsewhere in this Complaint and in Plaintiff's EEOC Charge.

137.    As a result of this conduct, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.      Find that Defendants discriminated against Plaintiff, in violation of the Illinois Human Rights Act;

B.      Order that CTCA implement effective steps to eliminate and remediate retaliation in the workplace;

C.      Award compensatory and punitive damages to the maximum amount provided by statute;

D.      Award all back pay lost since the date of termination plus pre-judgment interest;

E.      Award attorney's fees, expert witness fees, and costs as provided by law;

F.     Award forward pay due to decrease in lower earnings;

G.     Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

H.     Grant such additional relief as this Court deems just and proper.

Respectfully submitted,

/s/ Marc P. Trent
One of Plaintiff's Attorneys

Douglas P. Trent (ARDC #2855070)
Marc P. Trent (ARDC #6324928)
TRENT LAW FIRM, P.C.
350 S. Schmale Road, Suite 130
Carol Stream, IL 60188
P: (630) 682-3100
F: (630) 682-3554
attorneys@trentlawfirm.com

## CERTIFICATE OF SERVICE

I, Marc P. Trent, do hereby certify that on March 22, 2019, I served the foregoing Complaint, upon the following:

Midwestern Regional Medical Center, Inc.
d/b/a Cancer Treatment Centers of America
c/o Angela S. Minshall
2520 Elisha Avenue
Zion, Illinois 60099

And

Barry A. Hartstein, Esq.
Littler Mendelson, P.C.
321 North Clark Street, Suite 1000
Chicago, Illinois 60654

/s/ Marc P. Trent_____
One of Plaintiff's Attorneys

Marc P. Trent (ARDC #6324928)
TRENT LAW FIRM, P.C.
350 S. Schmale Road, Suite 130
Carol Stream, IL 60188
P: (630) 682-3100
F: (630) 682-3554
*attorneys@trentlawfirm.com*